UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

UNITED STATES OF AMERICA　　　　　　　　　　S9  04 Civ. 186 (SCR)

　　　　　v.　　　　　　　　　　　　　　　　　DECISION AND ORDER

DAWUD BARNES, KHALID BARNES,
AND TUERE BARNES
───────────────────────────────

**STEPHEN C. ROBINSON, United States District Judge:**

　　Khalid, Tuere, and Dawud Barnes are three brothers who are alleged to have run a narcotics enterprise, known as the "Barnes Brothers Organization". All three are charged with a RICO offense, a RICO conspiracy, various narcotics offenses, firearms offenses, conspiracy to kidnap, conspiracy to murder, kidnapping, and attempted murder. Khalid and Tuere Barnes are charged with murder. Khalid Barnes is charged with participating in a Continuing Criminal Enterprise.

　　The parties have made various motions and requests, which this Court rules upon as follows:

**I. Severance**

　　Currently, the Government is seeking the death penalty for Khalid Barnes, but not for Tuere Barnes[1] or Dawud Barnes.

---

[1] The Government recently filed a superceding indictment that added the murder charge against Tuere Barnes. Given the new indictment, he is now death eligible. However, the Government has not indicated whether they intend to seek the death penalty for Tuere Barnes.

1

**Discussion**

On August 18, 2006, this Court denied the defendants Tuere and Dawud Barnes' motions to sever the counts against them from the counts against their brother and co-defendant, Khalid Barnes, under Rule 14 of the Federal Rules of Criminal Procedure. Since that time, various events have taken place that have caused this Court to reconsider that decision.

To prevail on a motion to sever, the moving Defendants must overcome the "preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). This preference for joint trials "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998).

Accordingly, "a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. "[E]ven where there is a serious risk of prejudice, 'less drastic measures-such as limiting instructions-often suffice as an alternative to granting a Rule 14 severance motion.'" *United States v. Stein*, 428 F. Supp. 2d 138, 143 (S.D.N.Y. 2006) (quoting *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003)); *see also Zafiro*, 506 U.S. at 539 ("When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.").

In its August 18, 2006, Order this Court found that the moving defendants had not shown how a joint trial here "would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Therefore the moving defendants' motion for severance was denied.

However, since that time several facts have come to the attention of the Court which causes it to reconsider that decision. Dawud Barnes has been represented by Mr. Thomas Brooks, Esq., since his arrest. Originally Mr. Brooks was retained by Dawud Barnes. However, the Court converted him to CJA status when the length and complexity of this trial drained the resources and the ability of Dawud Barnes to pay for Mr. Brooks' services. Over the course of that representation Dawud Barnes has raised several concerns regarding the quality of the representation he has received. At a conference on December 7, 2007, Dawud Barnes stated that he had been unable to reach his attorney by telephone for a period of almost 18 months. Dawud Barnes indicated that when he left telephone messages for his attorney they went unreturned. It later appeared that the telephone number he had been provided by Mr. Brooks had been disconnected from service. Dawud Barnes further stated that Mr. Brooks visited him only a few times over the preceding 12 to18 months. Perhaps more importantly Dawud Barnes claimed that he requested that his attorney make an application to the Court for funds to engage a private investigator in order to have certain witnesses interviewed and to track down "newly discovered evidence". Mr. Brooks never made any such application to the Court. Such requests are routinely made to this Court in criminal cases and are often granted. The fact that Dawud Barnes believed making a request for a private investigator would be

helpful to his case and Mr. Brooks failed to make the request or adequately address the issue with his client is problematic.  Dawud Barnes also reported that Mr. Brooks missed a recent meeting among the co-defendants in the jail.  He stated that Mr. Brooks did not prepare for the meeting with him and did not fully explain his absence.

In a case where a defendant is charged with crimes of this magnitude, it raises serious concerns for this Court when there has been so little contact between attorney and client and investigative and other preparatory steps have not been vigorously pursued.  Such a gap in communication where the client legitimately seeks to discuss important aspects of his case is troubling.

Dawud Barnes, while sympathetic to the reasons for Mr. Brook's lapses, has indicated that he believes that too much time has passed for him to feel that he and Mr. Brooks can make up the time that has been lost.  This Court agrees.

In light of the foregoing, and after considering the explanations Mr. Brooks has provided, this Court orders that Mr. Brooks is relieved as counsel for Dawud Barnes.  The Court will appoint new counsel to represent him.  Given the timing of this development, – the trial is scheduled to begin within the next month – the fact that there is voluminous discovery in this case, and considering the seriousness of the charges Dawud Barnes faces , the Court  GRANTS defendant Dawud Barnes' motion to sever the counts against him from those against his co-defendant Khalid Barnes in order to allow appropriate time for new counsel to familiarize himself with the record and the facts.

Since the Court's decision necessitates two separate trials for Dawud Barnes, a non-death eligible defendant, and Khalid Barnes, a death eligible defendant, it serves the interests of justice to sever the counts of Tuere Barnes, a non-death eligible defendant, as

well, so that he may be tried with his non-death eligible co-defendant. At one point, the Court had questions about whether Tuere Barnes was able to understand the charges against him and assist in his defense. However, after submitting him for psychiatric testing, in which Tuere Barnes refused to cooperate, and reading the report submitted by Lawrence A. Siegel, M.D., this Court finds that Tuere Barnes is competent to stand trial and capable of assisting in his defense. His motion to sever is granted solely because in this circumstance, where there are going to be separate trials for his co-defendants, it makes sense to group him with the other non-death eligible defendant rather than the death-eligible defendant. Accordingly, Tuere Barnes' motion to sever is also GRANTED.

## II. Jury Selection Procedures

### a. Peremptory Challenges

At a conference on December 7, 2007, the Court granted the defendants' request for an additional 12 peremptory strikes beyond the number the Federal Rules of Criminal Procedure provides for Federal Death Penalty cases. *See* FED. R. CRIM. P. 24(b)(1). The Court granted this request in order to account for any potential disagreement between the death-eligible and non-death eligible defendants in exercising challenges. Because the non-death eligible defendants are now being severed from the death eligible defendant in this case, there is no need for counsel for Khalid Barnes to have additional challenges beyond those enumerated in the Federal Rules of Criminal Procedure. Thus, pursuant to Rule 24(b)(1) of the Federal Rules of Criminal Procedure, each side will have 20

peremptory challenges to prospective jurors. Those challenges shall be exercised in 10 rounds with the Government and the defendant challenging 2 jurors in each round.

### b. Attorney Conducted *Voir Dire*

In a letter dated January 8, 2008, counsel for Khalid Barnes reiterated their request that the parties' attorneys be permitted to conduct part of the *voir dire*. On December 7, 2007, the Court had ruled that the attorneys would not be permitted to ask questions directly of the prospective jurors. However, upon reconsideration, the Court will conduct the initial questioning of individual prospective jurors based on the answers provided by the juror on the juror questionnaire. The Court will then permit counsel for the defendant and the Government 5 minutes each to question individual jurors specifically on the topic of the death penalty.

## III. Defendants' Motion to Reconsider and Request for a *Massiah* Hearing

In a letter dated December 24, 2007, Khalid Barnes, joined by Tuere Barnes and Dawud Barnes, requested that the Court 1) reconsider its denial of their motion to suppress the wiretap evidence in this case; and 2) hold an evidentiary hearing pursuant to *Massiah v. United States*, 377 U.S. 201 (1964), to determine whether the government's case includes any post-arrest statements of the defendants that Bryan Conklin obtained on the government's behalf. The government, as detailed in its January 3, 2008 letter, opposes both requests.

The defense states that these requests arise as a result of the government's disclosure that Bryan Conklin, a defendant in this case who pled guilty to a three-count

information on April 4, 2006, served as a confidential source for the Putnam County Sheriff's Office after being arrested for selling narcotics to government informants. His cooperation with that agency in approximately May to June of 2002, which consisted of arranging sales for and making controlled purchases of narcotics, resulted in the arrest of three individuals, none of whom was charged in the present case. *See* Letter from David V. Harbach, II and Andrew Dember to Joshua L. Dratel *et al.* (Dec. 8, 2007).

### a. Motion to Reconsider

The defense argues that the government's failure to include Conklin's cooperation with the Putnam County Sheriff's Office in its Title III wiretap applications requires this Court to reconsider the defendant's motion to suppress. According to the defense, the government's omission was a material one that "violated the mandated 'full and complete statement' about the availability of traditional methods of investigation." Letter from Joshua L. Dratel and David A. Ruhnke to the Court, at 2 (Dec. 24, 2007), *citing* 18 U.S.C. § 2518(1)(c).

To succeed on a motion for reconsideration on the basis of new evidence, the movant must first demonstrate that the new evidence was "unknown to the [moving] party, and could not through due diligence reasonably have been discovered by the party, at the time of the original hearing." *United States v. Leaver*, 358 F. Supp. 2d 273, 279 (S.D.N.Y. 2005) (internal quotations omitted). As the defense acknowledges, "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX*

7

*Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The decision of whether to grant or deny a motion for reconsideration of a suppression order is within the Court's discretion. *See United States v. Bayless*, 201 F.3d 116, 131 (2d Cir. 2000).

In this case, the defendants have failed to satisfy the threshold standard for reconsideration. *See Leaver*, 358 F. Supp. 2d at 279. In fact, while they assert that "it is indisputable that Conklin's prior cooperation constitutes newly discovered evidence," they neglect to discuss whether they could, through due diligence, reasonably have discovered the information at the time of the original hearing. *See* Letter from Joshua L. Dratel and David A. Ruhnke to the Court, at 5 (Dec. 24, 2007). Instead, they focus on the fact that the government should have discovered and disclosed Conklin's cooperation. These arguments miss the mark since, as the government points out, the issue is not whether the government could reasonably have discovered the information, but instead whether the movants could have. And, as the government also notes, the fact that at the time of the original hearing Conklin himself was a defendant and a movant leads to a conclusion that the defendants could through due diligence reasonably have learned of Conklin's prior cooperation with local law enforcement.

Even if the defense could have satisfied the threshold standard for reconsideration, their argument would still fail because the evidence in question is not the kind that could reasonably be expected to have impacted a decision on the suppression motion. *See Shrader*, 70 F.3d at 257. Conklin's prior cooperation in procuring the arrests of three individuals wholly unrelated to this case certainly would have had no direct bearing on the determination. Furthermore, it would be unreasonable to assume, as the defense's argument seemingly requires, that simply because Conklin cooperated in a prior case, he

would be both willing and able to provide the government the kind of information it sought in applying for wiretap authorization. Moreover, as the government points out, even if the government had known of Conklin's cooperation at the time it applied for wiretap authorization, it would have had no reason to include it in the application because there was no basis to expect Conklin to cooperate in a prosecution where he was a primary target. The defendants' request that the Court reconsider their motion to suppress is denied.

### b. Request for a *Massiah* Hearing

The defense also asserts that an evidentiary hearing pursuant to *Massiah v. United States*, 377 U.S. 201 (1964), is necessitated by both the fact that the government had not disclosed Conklin's status as a cooperator and the possibility that the government may seek to introduce statements of the defendants elicited by Conklin on the government's behalf, or any fruit derived therefrom.

A violation of the Sixth Amendment right to counsel occurs "when a private individual, acting as a government agent, 'deliberately elicit[s]' incriminating statements from an accused in the absence of his counsel." *United States v. Miller*, 116 F.3d 641, 665 (2d Cir. 1997) (citing *Massiah*, 377 U.S. at 206).

The government responded to the defendants' request in part, and though under no obligation to do so, by disclosing details surrounding Conklin's guilty plea in this case and stating that 1) the government is not aware of any statements the defendants made to Conklin after he pled guilty; 2) the government never asked or encouraged Conklin to obtain such statements on the government's behalf; and 3) the government has no

intention of introducing any such statements at trial. *See* Letter from David V. Harbach, II and Andrew S. Dember to the Court at 8-9 (Jan. 3, 2008). As a result, no *Massiah* hearing is warranted, and the defendants' request for a hearing is denied.

## IV. Conclusion

For the reasons set forth above:

1) Mr. Thomas Brooks, Esq. is relieved as counsel for defendant Dawud Barnes;
2) Defendants Dawud Barnes and Tuere Barnes Motion for Severance is Granted;
3) The Government and Defendant Khalid Barnes will have 20 peremptory challenges to prospective jurors;
4) The Government and Defendant Khalid Barnes will each be allowed 5 minutes to question individual jurors specifically on the topic of the death penalty; and
5) The Defendants' Motion to Reconsider and Request for a *Massiah* Hearing is DENIED.

*It is so ORDERED.*

Dated: White Plains, New York

January 24, 2008

Stephen C. Robinson, U.S.D.J.